If it pleases the court, my name is Michael Cluff representing Mr. Jordan. I'd like to reserve three minutes of my time on the assumption that I'm going to address in that time the 28-J letter that was filed yesterday rather than discuss it now. Could you tell me about the 28-J letter filed yesterday? What was it? Can you speak up as much as possible? I'm sorry. There was a 28-J letter filed yesterday addressing the issue of Hernandez. I would rather defer until I assume the government will raise that issue themselves rather than address it. Larry Jordan's plea was not voluntary in this case. That is, in fact, the critical issue before the court. As I believe the totality of the record clearly establishes, Mr. Jordan never intended to plead. He only did so after his counsel emphatically stated on the record that he would be unable to represent Mr. Jordan effectively because of two rulings by the trial court. I think that I have briefed fairly in fair detail the facts of the case, and I don't plan to go over those facts with regard to the two issues, the first being the denial of real-time reporting. And I want to be clear that I have never argued that that denial in and of itself coerced Mr. Jordan into pleading. It was that denial in combination with a much more critical denial of a continuance, which Mr. Jordan's trial counsel requested when there was a sudden flip by the co-defendant on the eve of trial. I think this is a very unusual case, both because of the real-time reporting issue, but also because of the fact that I do a substantial amount of ineffective assistance for counsel work. Rarely have I ever seen a case in which the record is so clear, in which counsel says if I am doing these things are not granted, I will not be able to represent my client, and in particular, his statements with regard to not having prepared for the possibility of having to cross-examine the witness who all of a sudden became the most critical witness against or would have become the most critical witness against Mr. Jordan at trial. But, counsel, what was there for him to do other than look at his statement and have an investigator go out and pull his criminal record, which I'm sure the U.S. attorney would turn over anyhow? I mean, this isn't that unusual. You're making it seem like a plea of a co-defendant on the first couple of days of trial is something akin to lightning striking. But it's very common for it to happen. Your guy is the getaway driver, and what is this guy going to testify to that? He participated in the planning meetings. Why did defense counsel have to investigate the robbery itself? What does that have to do with anything? Well, Your Honor, two things. One, the record doesn't clearly establish all of the circumstances that were there with regard to what he would or wouldn't have investigated. I think that that's something that where I'm making that claim on habeas would require a more substantial record. What I think is important in this record, though, is that the attorney, after having basically said that he has a hearing problem, creating doubts within the client's mind about his ability to represent him, stands up on the day of trial and says, I can't represent you. I didn't investigate this. And so the important thing in this case is not the actual issue of whether or not the continuance was wrongfully denied. I think it was. But that's not the real issue. The real issue is, did defense counsel's statement that he was ineffective create a situation in which Mr. Jordan felt compelled to plead? And I would suggest, as I document in the record, that if we look at the totality of the circumstances, I think we have to be this is a clear case in which simply looking at the Rule 11 colloquy doesn't suffice. But you say it doesn't suffice. Doesn't he have some obligation to say in that colloquy, I'm only doing this because you didn't give the continuance, you didn't give the real-time reporting? Doesn't he have an obligation to at least advise the judge of what his situation is to allow the judge to explore it? How can he just stand mute and answer yes to everything, admit the facts, say his attorney did a good job, have the attorney say, I was prepared for trial? I mean, what is a district judge supposed to do, read minds? Now, I think in this case, if you look at all of the things that Mr. Jordan did do, the fact he asked for new counsel, that was denied. He saw the judge very dismissively deny his counsel's request for real-time reporting twice on two separate occasions. He saw the judge very dismissively deny the request for continuance in no unambiguous terms at all. Mr. Jordan, I think, is in at this point in time, for all practical purposes, Mr. Jordan is representing himself. He is not a trained attorney. He made two good decisions in the entire case. One was pleading guilty to avoid the life sentence, and the other was at the sentencing saying to the judge, I'm really sorry that I participated in this crime. It's out of character for me, and thank you, judge, for listening to me. Other than that, it's a series of nonsensical statements that he makes, including, you know, I was coerced into this from threats from gangs. I was on pain medication, and I couldn't think clearly. I didn't get a full copy of the discovery. No one told me what the potential sentence was. I had my counsel displayed racial conflict while interviewing the witnesses. He's just throwing everything at the wall to see if anything sticks. Your Honor, I very specifically not argued any of those issues because I think that those are the kinds of issues that would only be properly raised on habeas. I think that the issues that were before the court that were relevant at the time he pled are the facts of those two denials and his counsel's statements. So what does he say at the day of the guilty plea that puts anyone on notice that he is doing anything other than taking advantage of an opportunity to plead to a non-life sentence? What does he do on the day of the guilty plea to let us know he's being intimidated and coerced into this? Your Honor, respectfully, I don't think that you only look to the Rule 11 colloquy. I think that Anderson and Vaughn both established you look at the totality of the record. In this regard, there are two things that are very critical. One, Mr. Jordan, first place, I think it's an arguable proposition whether Mr. Jordan would have received a life sentence. I think given his role, it's very unlikely. Judge basically said he was going to give him a life sentence if he had been convicted on all three counts. He heard the explanation of this idea that somehow if he had had an opportunity to go to trial, the same judge would have said, oh, geez, he only had a small role in this savage killing of an armored guard, so I'll give him less time. That's kind of speculative at best. I want to reserve my time. Okay. I respectfully disagree on that. But I think the important thing is Mr. Jordan has a life sentence. 20 years for Mr. Jordan will, in effect, be a life sentence. And it's very important, this is a case in which three days after he pled, he didn't wait to get a sentence or anything else. He immediately tried to reverse the plea. That case law, I think, clearly establishes that's a very important criteria in judging whether or not a person is intentionally trying to simply get a better deal. I'm sorry if I took too much of your time. I'm sure Judge Reinhart will give you a couple extra minutes on that. Of course. Three minutes. Three minutes. Thank you. Thanks, Counsel. Good morning, Your Honors. May it please the Court. Mark Yohalam on behalf of the United States. I want to start because it sounds like the Court may not have received the 28-J letter when the government filed, certainly far too late. I have copies of it here, which I can give to the Court. But let me summarize what it says in essence. As the government says in the answering brief, ordinarily a guilty plea, an unconditional guilty plea, extinguishes your ability to challenge antecedent adverse rulings. This Court has recognized in a case called Hernandez in 2000 a narrow exception to that, which is where a defendant is put to the unconstitutional choice of proceeding to trial in a trial that would be structurally unfair or pleading guilty. If that's the choice that's put to the defendant, then his guilty plea is necessarily involuntary. Hernandez is a Feretta case, but the language in Hernandez I think makes clear that it would apply to any structural Sixth Amendment violation. The reason why I filed the late 28-J letter, I got involved in this case very close to argument, it seems to me that Hernandez is exactly the lens through which this case should be looked at. The reason why Hernandez is unfavorable to the government is that it does acknowledge this exception to the rule that the government relies upon in the answering brief. The reason why it's favorable to the government is that it makes clear that it has to be a structural Sixth Amendment violation. In other words, ineffective assistance, the strictly kind of ineffective assistance, would not be sufficient to create the Hobson's choice that defendant complains about. It has to be the deprivation of counsel, chronic error, that would cause the choice. And here, first of all, the government doesn't think that the defendant has established that it would have been ineffective, that defense counsel would have been ineffective at trial. But even if the defendant could satisfy that, that would be Well, how can he be effective at trial if he can't hear what's going on? I agree with Your Honor that if he could not hear what was going on at trial, he would be ineffective. And how do we know that he could hear? I mean, the evidence that he presented seemed significant that the lawyer presented. I mean, it was first, you know, telling the judge, you know, he has serious problems. The judge apparently tried to make accommodation by giving him a speaker, but then he came up with a letter from a doctor and said that only made matters worse, that the hearing devices would only make it worse. So I'm a little focused on the hearing, and I'm trying to figure out how he could have been effective if he couldn't hear. Yes. So two things. First, I would note that my opponent has conceded that the denial of the cart would not in and of itself have created a coercive environment. Well, whether he concedes that or not, I want to know if the law supports that. Yes. Absolutely. And the answer is that what defense counsel suffered from was not complete hearing loss. It was what's called unilateral hearing loss in his left ear. Did you have a doctor examine him, and then you offered doctors? I didn't see that in the record. I had a doctor examine him. Right. And the doctor reported that he had severe hearing loss in one ear, but no hearing loss in the other ear. And if you look... But the doctor, the statement from the doctor on the motion to reconsider, apparently, from what I read, made it clear that he'd have real difficulty understanding what was going to be transpiring in court. I actually think that that's incorrect, Your Honor. I've read that declaration several times. And one of the reasons why I've read it so many times is I actually have a daughter who has unilateral deafness. And so some of the terminology is maybe more familiar to me than it would be to a layperson. But I don't know if it's... I'm not trying to bring extrinsic information. But what do you... Wait, wait one minute. I'm just, thank you. I'm sorry, you know, if your daughter has that. But I don't know if it's appropriate for you to offer what might be considered expert testimony on what the impact was. I think no one knew better about whether or not the lawyer could hear what was going to be happening in court, in trial, which I think is probably a critical case, than he and his doctor. And he had proof with the doctor. So I'm sorry to interrupt you, but I'm just trying to go based on the declaration. And my apologies, Your Honor. I was not prepared to start offering expert testimony to the court. Instead to say what is in the expert report, which is a description of the degree of hearing that defense counsel had in his left ear. And the statements of the expert are that the ameliorative steps that the court offered would not resolve the deafness in the left ear. So, for example, if you compare the initial letter from the House Institute doctor and the second letter, there are two of them. The first one says that the acoustics in the room would affect how well defense counsel could hear. The second letter says, I just want to clarify, when I said that, I meant his overall hearing. It would not affect the level of hearing in his left ear. And so what the declarations established and what the district court found that they established is that defense counsel couldn't hear in his left ear. Not that he couldn't hear overall. And then the district court had observed defense counsel in a series of hearings in front of the court and had never observed any difficulty with defense counsel's hearing. And I'll stop. But, you know, the defense counsel never said at any time during those hearings, Your Honor, I'm having difficulty understanding. I can't hear. The case actually proceeded to trial, and there was a day of trial. Defense counsel never said, for the record, Your Honor, during the opening statement, I couldn't hear what the prosecutor was saying. During cross-examination, I had difficulty performing the cross-examination because of my hearing impairment. And so my view is not that this could never be an effective assistance. I guess I'm just having trouble understanding the rationale of the district court for denying real-time reporting in light of the second declaration from the doctor. It would not have taken any much effort in giving him the real-time reporting. And I don't understand why that's accommodation, which would have helped considerably even accepting your assessment in this trial. So do we not look at that at all? I think the court certainly can look at that. And I agree with the court that it certainly would make an easier record for the government on appeal if the court had granted the CART device. And it's not my assessment of defense counsel. The assessment that the court gave was that it had observed that he was having no difficulty with hearing, and that was why he was not going to give the CART device. I don't think a failure to comply with the judiciary conduct manual would itself give rise to an involuntary guilty plea. The question is whether it so severely impaired counsel's ability to represent defendant that it amounted to a deprivation of counsel. So I certainly wouldn't ask the court ever to hold that a hearing impairment can never establish an effective assistance. Sort of a paradigmatic way that it could is suppose that the case had proceeded to trial, and during cross-examination of the cooperator, the cooperator said something, or direct examination, said something that would have been, opened him up to a devastating line of cross-examination. But for whatever reason, defense counsel didn't pursue that line of cross-examination. And then he didn't pursue that line of cross-examination. Do you think he heard it? No. This is a hypothetical. And then hypothetically, that happens, and defense counsel says, Your Honor, I would have done that, but I didn't hear what he said. That would be, in my view, a sort of classic strict one in effective assistance. But it's not a chronic deprivation of counsel. You could even have a hearing impairment that would be a chronic deprivation of counsel, which would be complete deafness. Obviously, a lawyer who is completely deaf and has no CART device or anything would be incapable of performing. But this kind of hearing impairment, which may or may not at times cause issues, falls much more into the category of something like a mental illness. And this Court has said that a mental illness is not per se evidence of ineffective assistance of counsel. What you need to do is show that that mental illness or deficiency caused some kind of ineffective assistance at trial. And that's why, again, to go back to the Hernandez case that I cited in the 28J letter, if defendant had gone to trial and his counsel had in some way performed ineffectively, then it would be a legitimate habeas petition, or perhaps it would even be the rare case where an IAC claim could be raised on appeal. But having not gone to trial, I don't think that he can avail himself of the benefit of a sort of ---- But he should have known to go to trial and lose and then come up on the 2255 route. Well, I think ordinarily when you have an adverse pretrial ruling, the course is to either enter a conditional plea that preserves your right to appeal the issue, or to go to trial and lose, if that's what it takes. That's what the Supreme Court has long recognized and this Court has long recognized, that sometimes you are put to a hard choice of going to trial even in the face of a bad ruling. That happens all the time with suppression rulings. We just have, because we've already taken you over time, I just want to ask a question about the related subject. Didn't the lawyer tell the judge and the client that he was not prepared to represent him? With respect to the cross-examination. No, no. Forget the ears. The lawyer, as the lawyer said, I'm not prepared to go to trial. I'm not prepared to represent him. So the lawyer said that because of the last minute change of plea by the co-defendant who became a cooperator, he wasn't prepared to go to trial because he wasn't prepared to cross-examine the cooperator. The government responded that it would postpone calling the cooperator until the end of the government's case. And the estimate of the length of the case in chief was two and a half weeks. The defendant had asked for a ten-day continuance. So while it may have been the case that the defense counsel would have been unprepared at that moment to cross-examine the cooperator. Well, what did he say about that when they said you can do it later? I mean, I'm not talking about the accuracy of what he said, you know, whether it was true, whether he was right. But I'm talking about what did the lawyer, what did the client hear from his lawyer? His lawyer heard that he was not prepared to defend him on a key aspect of the case. Yes, that's true. Well, is that not a reason for a defendant not to want to go to trial with a lawyer who says I'm not prepared to try the case? I agree, Your Honor, that conceivably a defendant could be so distressed by hearing that that he would feel compelled to plead guilty. Well, if you want to tell us, how would you feel? That's not a serious question. But, you know, if you're a defendant, and if this were all correct, if you were a defendant and your lawyer said on the day of trial, I'm not prepared to go to trial, and I want a continuance and the judge promptly said no, and it was the lawyer's position that he was not, what should the defendant do? Go to trial with a lawyer who's not prepared to handle the case? I think the answer is yes, Your Honor. And the reason why is because the opposite rule would create an extremely problematic structure of how pretrial continuance requests would go. I acknowledge that my opponent has said he finds it extremely unusual for defense counsel to say I'm not ready to go to trial. I'm certainly much junior to him, but I have seen that quite frequently where defense counsel will say I'm not ready, Your Honor. I need a continuance. If I don't get a continuance, you know, the sky is going to fall, and they get denied. And if in all of those instances a guilty plea is necessarily involuntary, then it seems to me that you would be opening up the possibility of those guilty pleas being overturned with quite a bit of regularity. The usual course is that when there's a guilty plea, there's a Rule 11 conque, as there was here, and the defendant is asked if he's pleading guilty because he's guilty, whether he was threatened or coerced, and so forth. Here, there was no indication that he felt involuntary. And then when he filed his motion to withdraw his guilty plea, although, as Judge Lasnik noted, he threw everything he could against the wall, he actually doesn't mention these two issues among the reasons for withdrawing his guilty plea. So there's nothing like a declaration in the record from defendants saying the reason I pleaded guilty was because my lawyer was going to be unable to represent me because he said he was going to be unable to represent me. If there were such a declaration, then you would have to weigh it against the solemn sworn oath at the Rule 11 conque, and even there I would say the district court's finding of voluntariness probably would not be clearly erroneous, but you would at least have something to fight about. I think for the court to basically infer from the circumstances involuntariness, there's not enough in the record to establish clear error in the district court's finding of voluntariness. Thank you. Thank you, Your Honor. Does the court need copies of the 21st? First I want to be clear. When I said that the hearing issue was not dispositive with regard to the voluntariness issue, that's all I was saying. I wasn't saying that the judge's failure to provide real-time reporting wasn't an error or it wasn't harmless. It was in the context of whether that in and of itself would have triggered the client's decision to plead. And I'm admitting that wouldn't have done it. That is absolutely critical because that issue, I would concede, if there were a voluntary plea, then there would be no basis for this court to go back and look at the real-time reporting issue. But the issue that there is not a voluntary plea means that this court can go back and look independently at the judge's decision on real-time reporting as if it had been raised and objected to and there had been a conditional plea. So that's all I'm saying there. Secondly, I think that one of the problems with the government's position is that they are confusing some of the standards. First, I will be prepared if the court would request it after reading the 28-J letter to respond. I think Hernandez is a brilliantly reasoned opinion. I don't think it's relevant. It does not create a chronic standard for measuring voluntariness. The standard for whether or not a confession is voluntary is absolutely clear. It has to do with whether or not the confession is voluntary. It's been established in the ineffective assistance of counsel cases by Hill and numerous other cases. And the test, and I think this goes to Judge Lassit's questions as well, the question is, for prejudice, is would the defendant have pled guilty but for the ineffectiveness of counsel? And I think that that's the standard. We can't have a mock trial to determine whether the outcome would have been different. The only issue is, did that defendant voluntarily plea? Now, I also want to be absolutely clear. This is not a case where counsel stood up, and we all know this happens, and said, You know, Your Honor, I'm really not prepared. I've got some witnesses I've got to go interview. In my brief, I specifically distinguished all of the cases that they cited having to do with continuances. But more importantly, what is absolutely clear from the record, and I want to make clear, it was not just with regard to the continuance that trial counsel said he was ineffective. On page 144 of the excerpts of the record, trial counsel said, If the requested services are not authorized, I believe that Mr. Jordan will be denied his right to effective assistance of counsel and his right to a fair trial. Now, I think it is important as a matter of principle that if an attorney stands up in court and makes that definitive of a statement, and his statements with regard to the continuance were just as definitive and they were backed up by specific references to the things that he had not been able to do, if a client hears his attorney say that in court on those two grounds, I think there is or I think it becomes clear that that client has a reason to conclude he is not going to be able to get a fair trial. For those reasons, I think that this is a very, very important case in terms of the whole context of a plea and the voluntariness of a plea and whether or not we are really going to guarantee defendants the right to have the kind of proceedings that are fair and just. Thank you. So, go ahead, Judge. I have two questions for you. One, what's your response to counsel's statement that when the defendant told the attorney why he felt he should be allowed to withdraw, he didn't mention this issue at all of counsel's unpreparedness? Your Honor, Mr. Jordan at that time was still represented by Mr. Evans, the attorney. This is a defendant with no counsel. I think that if in fact the court had granted his request for the appointment of counsel and then he files a declaration or he files a new trial motion, that then it would carry some weight. But we've got basically a client who knows one thing and one thing only. He knows he didn't want to plead. He tells the court three days after he pled, I want a new attorney. The court doesn't act on that. He files his own motion. You read the motion. You can tell this is not a highly educated, literate client. So in those contexts, I don't think you can hold that standard against the client. I think, once again, if you go back and you look at Vaughn and you look at Anderson and the discussion of the totality of the circumstances, you look at the fact he had continually objected to continuances. He had turned down a plea deal that would have been a better plea deal shortly before. Immediately after he pleads, he tries to reverse it. He was not confronted with a situation where all of a sudden the sentence was going to be worse, and so he was trying to change his mind. I think all of those things indicate this was a client who sincerely wanted his day in court, and he was denied it. Okay. Second question is what is the effect of the fact that the district judge made a ruling that that was not the reason for his plea, but that the reason for the plea was that he learned that his co-defendant would testify against him? What weight do we give to that? How do we review that? I, quite frankly, Your Honor, I'm not sure how we can give weight to a judge's claim that that's what it, in effect, is. There wasn't any evidentiary hearing. There was nothing that established that that's the reason he pled. I would suggest that the Court should look to the totality of the record and see that Mr. Jordan was continually trying to go to trial, and it was only – I mean, because remember, he didn't immediately plead once his co-defendant flipped. He pled only after his attorney gets up and says because his co-defendant pled, he couldn't represent him. So I think that that finding in and of itself by the judge is not the kind of factual finding that has any basis that could be deferred to. What do we do with the fact that Mr. Evans says, you know, in a representation to the Court on June 23rd, I have carefully discussed every part of this agreement with my client. I further have fully advised my clients of his rights, possible defenses, and to my knowledge, my client's decision to enter this agreement is an informed and voluntary one. And he says he was prepared for trial. Now, is he telling the truth then, or is he telling the truth when he's posturing for trying to get a continuance? And you're saying he was telling the truth then, and now he's lying to the Court here. And what's the sanction for doing that? Well, two issues. I think the last question is not for me. The first question, though, is that the dispositive question is, is what was going on in my client's mind? Because this is what I think is absolutely crucial. The issue is whether or not his plea was voluntary. And so he could have the best attorney in the world, but if he honestly believed that that attorney was not prepared to go to trial, and he felt coerced into the plea because of that, that would be an involuntary plea. Well, let me ask you this. Is Mr. Jordan now entitled to a complete dismissal of his case? Because jeopardy attached when the jury was sworn in, and he had a constitutional right to go to trial in front of that jury. And the only thing that prevented him was the fact that his lawyer was unprepared or the judge didn't accommodate his lawyer's disability. Why shouldn't he just get double jeopardy and walk him out the door? Your Honor, I think that raises a very complicated issue. I would say the following. I don't – I think that if he were to withdraw his plea, it's not clear what the retroactive effect of that would be. I'm not prepared to brief that issue or argue that issue. What I can tell the Court is that I take very serious when I represent a client who has a plea and may expose himself to more damage. I have had numerous discussions with my client on this matter. He is absolutely clear that what he is likely facing is a new trial. If the Court should determine that there's a double jeopardy issue, that's a different thing. I have not argued that, and I'm not arguing that, and my client's appeal is not based on that assumption. Thank you, Hansel. Thank you both very much. The case is there. It will be submitted.
judges: Lasnik, Reinhardt, Murguia